**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| GLORIA J. MOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:07-cv-00162-JEO |
| | ) | |
| BRADLEY ARANT ROSE & | ) | |
| WHITE LLP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This cause is before the court on the motion of Defendant Bradley Arant Rose & White
LLP ("Bradley Arant" or "the defendant"), for summary judgment.  (Doc. 16.)[1]  After
consideration of the briefs and the evidence in the record, the court finds that the motion is due to
be granted.

**I.     PROCEDURAL HISTORY**

Plaintiff Gloria J. Moss ("Moss" or "the plaintiff"), filed her complaint against the
defendant in this court asserting that she was improperly terminated under the Americans with
Disabilities Act ("ADA")[2] (Count One), under Title VII (Count Two), and Section 1981[3] (Count
Three)[4]; she was denied benefits under the Family Medical Leave Act ("FMLA")[5] (Count Four);

---

[1] All references to "Doc. ___" are to the documents of record numbered by the Clerk of the Court in the electronic
filing system.

[2] 42 U.S.C. § 12101, *et seq.*

[3] 42 U.S.C. § 1981.

[4] 42 U.S.C. § 2000, *et seq.*

[5] 29 U.S.C. § 2601.

and, she was retaliated against for making a claim under the FMLA (Count Five).  (Complaint).[6]
On December 14, 2007, the defendant filed its motion for summary judgment as to the plaintiff's
entire complaint.  (Doc. 16.)  The issues have been fully briefed by counsel for the parties.

## II.    FACTS [7]

The plaintiff worked for the defendant from 1997 to 2006.  She began her employment as
a cleaning employee and then was promoted to a legal assistant.  (Moss Deposition ("Moss Dep.
at pp. 33-34, 51-52).)[8]  She principally performed the services of a file clerk (*e.g.*, organizing the
files, creating notebooks, and handling paperwork and filings).  *Id*. at 64-65.

She asserts that she suffered from a number of disabilities while being employed at
Bradley Arant (*e.g*, "Hepatitis C, ischemic heart disease, and a nerve disorder in her left arm
which prevents [her] from being able to fully operate or close her left hand") (Complaint at ¶ 10;
Moss Dep. at pp. 20-21, 255, 270) and other liver and back problems[9] (Moss Dep. at pp. 20-21,
258, 266)).

Moss missed various days while working at Bradley Arant.  She was counseled on
September 20, 2005, and January 19, 2006, concerning her excessive absenteeism.  (Moss Dep.
at pp. 287-307 & Ex. 2 & 3.)[10]  In the "Employee Comments" section on the standard

---

[6]The complaint is located at document 1 in the court's file.

[7]The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the
plaintiff.  They are the "'facts' for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator
U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*,
14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[8]The plaintiff's deposition is located at document 17, exhibit A.

[9]The back problems required three surgeries in a relatively short period in 2005.  *Id*. at 21.

[10]The exhibits are attached to her deposition.

2

memorandum regarding the September 22, 2005 writeup, she stated:

> I am very sorry that I've had to miss days off on my job because of various Doctors Appointments and Hospitalizations. I have done the best that I could to prevent absenteeism. I will put forth more effort to prevent the tardiness, Short Days for Doctor Appointment. I will talk to my doctor's [sic] about scheduling my appointment closer to the end of the day in which I've done already.

(Moss Dep. at Ex. 3.) In the memorandum concerning the January 19, 2006 writeup, Human Resource Manager Judy Davis reminded Moss that she could request FMLA leave. Specifically, she wrote as follows:

> As mentioned before, if any of these absences are medically qualifying events under the Family Medical Leave Act (FMLA) you must complete the appropriate documentation along with accompanying physician's statements. The information will then be reviewed and either approved or denied based on the criteria for a medically qualifying event.

*Id*., Ex. 2 at p. 2. As a consequence of these events, the plaintiff became sick and, ultimately, was demoted. *Id*. at pp. 307-08. Explaining her demotion, she stated that her work assignments were reduced. *Id*. at pp. 308-09. However, her title and pay were not changed. *Id*. She concludes that these events ultimately led to her termination. *Id*. at pp. 310-11.

On January 20, 2006, Sherry Bush, attorney Matt Lembke's secretary, reported that Moss said, "If I don't resign I'm going to kill him," while pointing to Lembke's office. (Abdul Kallon's Aff. at ¶ 4.)[11] Moss further accused a co-worker of "telling on" her. *Id*. Bush reported these comments to Lembke on or about the same day. *Id*. Lembke then advised Davis of the situation. *Id*. Davis next interviewed Bush regarding the events. Bush repeated what she had reported to Lembke. *Id*.

On January 27, 2006, another Bradley Arant employee, Ginny Fitzgerald, reported to

---

[11]Kallon's affidavit is located at document 17, exhibit B.

Kallon that Moss had made a number of other threatening comments about co-workers. (Kallon Aff. at ¶ 3.) According to Fitzgerald, Moss told her the day before "that she used to be so angry with Terry Kelley that she would think about killing her. She has a baseball bat about that long ('18') with tape on the handle and she would think about beating her to death or beating her until Terry begged to die." *Id*. Fitzgerald also reported that Moss said she "understands why people shoot up their offices," and that "something awful is going to happen to the families of the people who are mean to her." *Id*.

Kallon, Davis, and Bradley Arant attorney Jay St. Clair discussed the reports. They determined that Moss should be terminated. *Id*. at ¶ 5. Kallon stated:

> . . . Faced with two independent reports that she has threatened others and made comments along the lines of she "understands why people shoot up their offices," we felt that the firm had to take action to protect its employees. A failure to respond promptly and effectively not only could have exposed our employees to danger, but it also would have exposed the firm to liability. We determined that termination was the only reasonable option, particularly in light of the serious, and graphic, nature of the reported threats . . . .[12]

*Id*. Moss was terminated on February 1, 2006.

## III.   STANDARD OF REVIEW

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of

---

[12]The plaintiff denies making the threats. (Moss Dep. at pp. 143-54.)

4

material fact that should be decided by trial.  Only when that burden has been met does the

burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact

that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.

1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142

(1970).

      The movant can meet this burden by presenting evidence showing there is no dispute of

material fact, or by showing that the nonmoving party has failed to present evidence in support of

some element of her case on which she bears the ultimate burden of proof.  *Celotex*, 477 U.S. at

322-23; *see* FED. R. CIV. P. 56(a) and (b).  Once the moving party has met its burden, Rule 56(e)

"requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  The nonmoving party

need not present evidence in a form necessary for admission at trial; however, the movant may

not merely rest on the pleadings.  *Id*.

      After a motion has been responded to, the court must grant summary judgment if there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c).  The substantive law will identify which facts are material and which are

irrelevant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986).  "[T]he judges's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at

249.

IV.     **DISCUSSION**

Although the plaintiff presents five claims for relief under four distinct federal statutes, the applicable standard for reviewing the claims is the usual three-step analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999) ("The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims."); *Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006) (race discrimination); *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (FMLA).  The plaintiff must first establish a *prima facie* case.  Following this demonstration, the defendant is required to articulate a legitimate, non-discriminatory reason or reasons for its actions.  Thereafter, the plaintiff is required to come forward with evidence that the proffered reasons are a pretext for discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.

The defendant asserts that the plaintiff cannot establish a *prima facie* case under any of the asserted claims for wrongful discharge.  (Brief at p. 11.)[13]  With regard to her termination claim, the defendant asserts that she can not show that Bradley Arant's articulated reason for terminating her is a pretext.  *Id*.

A.      **Termination Claims**

The defendant principally relies on two cases in support of its claim that summary judgment is due to be granted on the plaintiff's claims to the extent she alleges an improper termination.  Those cases are *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466 (11th Cir. 1991) and *Holland v. Washington Homes*, *Inc.*, 487 F.3d 208 (4th Cir. 2007).

---

[13]The defendant's brief is located at document 16.

6

In *Elrod*, the plaintiff sued Sears for age discrimination after he was replaced by a younger employee. Sears claimed that he was terminated based on the belief that he had been sexually harassing female employees. Elrod presented evidence that he had not harassed the complaining employees. However, he presented no evidence that the decisionmakers did not believe the harassment charges. The jury returned a verdict for Elrod, and the trial court denied the defendant's motion for judgment notwithstanding the verdict. On appeal, the Eleventh Circuit Court of Appeals reversed the district court's decision, stating:

> We must make an important distinction before proceeding any further. Much of Elrod's proof at trial centered around whether Elrod was in fact guilty of the sexual harassment allegations leveled at him by his former co-workers. We can assume for purposes of this opinion that the complaining employees . . . were lying through their teeth. The inquiry of the ADEA is limited to whether [the decisionmakers] *believed* that Elrod was guilty of harassment, and if so, whether this belief was the reason behind Elrod's discharge. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 n.2 (11th Cir. 1989), *cert. den.*, 495 U.S. 935, 110 S. Ct. 2180, 109 L. Ed. 2d 508 (1990) (That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong.). "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted) . . . .
>
> Elrod has offered no evidence to show that Sears' justification is unworthy of credence. Certainly Sears is permitted to discipline an employee it believes to be guilty of sexual harassment. If Sears does nothing in the face of such a belief, Sears runs a serious risk of incurring Title VII liability to those employees harassed . . . . Elrod may have convinced the jury that the allegations against him were untrue, but he certainly did not present evidence that Sears' asserted belief in those allegations was unworthy of credence.

*Elrod*, 939 F.2d at 1470-71 (footnote omitted) (italics in original).

In *Holland*, the plaintiff alleged that he was terminated because of his race. The

defendant argued, and demonstrated to the trial court's satisfaction, that he was terminated because the decisionmaker had received reports that the plaintiff had threatened the company's vice president.  The plaintiff denied the allegation.  However, the trial court granted the defendant's motion for summary judgment.  On appeal, the Fourth Circuit Court of Appeals affirmed the granting of the motion.  In doing so, the court stated:

> Unfortunately for Holland, he has not put forth sufficient evidence showing that Washington Homes' proffered legitimate explanation was false. Aside from his denials as to the threats (which we accept as true), nothing in the record supports an inference that DeCesaris's [the decisionmaker's] explanation was pretextual, or perhaps more on point, that DeCesaris did not believe that Holland had threatened [the vice president] when he made the decision to fire him.

> . . . .

> Here, the uncontested evidence established that DeCesaris (the decisionmaker) honestly believed that Holland deserved to be discharged for threatening [the vice president], regardless of whether Holland did in fact issue the threats.  Thus, Holland's evidence failed to address whether DeCesaris did not honestly believe that the threats were made, and ultimately, "[i]t is the perception of the decisionmaker which is relevant."  [*Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998)]; *see, e.g.*, *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006) ("In assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible.").

> Accordingly, we agree with the district court's treatment of the issue:

>> Even if Holland did not threaten the vice president, which the court must accept for purposes of this motion, Plaintiff has come forward with no evidence to show that Mr. DeCesaris did not believe Holland had made threats when Mr. DeCesaris decided to fire him.

> In short, on the evidence in the record, no reasonable juror could conclude that Washington Homes' "proffered explanation is unworthy of credence."  [*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089 (1981)].  Beyond that, Holland has failed to put forth sufficient evidence showing

that discrimination was the real reason behind Washington Homes' decision. Accordingly, we affirm the district court's judgment with respect to Holland's discriminatory discharge claim.

*Holland*, 487 F.3d at 215, 217-18 (internal brackets and transcript citation omitted).

The defendant in this case argues that the dispositive question on these claims is "whether Bradley Arant's decisionmakers believed the reports, and whether they terminated Moss based on the reports." (Brief at p. 13.)  It concludes that there is no evidence to contradict Kallon's affidavit testimony concerning the reason for the termination.  *Id.*  In support of this contention, the defendant argues as follows:

> . . . Bradley Arant has demonstrated that it fired Moss because its decisionmakers believed her co-workers' reports that she had threatened violence against Lembke and Kelley.  Moreover, the decisionmakers' belief was reasonable under the circumstances.  They were given two separate reports about threats Moss made against a lawyer and co-employee.  Sadly, workplace violence is all too common in today's society.  Faced with two independent reports that Moss had threatened others and made disturbing comments . . . Bradley Arant had to take action.  A failure to respond promptly and effectively not only would have exposed employees to danger, but also would have exposed Bradley Arant to liability . . . .

(Brief at pp. 15-16.)  The plaintiff responds, "With no prior incidents or reprimands relating to Moss' conduct or similar acts, Bradley's decision could not have been based upon any reasonable beliefs.  Therefore, a genuine issue to the fact Moss' termination exists and should be presented to the trier of fact."  (Response at p. 3.)[14]

Upon examination of the record, it is clear that there is no evidence offered to contest the affidavit testimony of Kallon that the decisionmakers terminated her because of the reports concerning her comments referencing the use of violence.  Nothing even suggests that the

---

[14]The plaintiff's response in opposition to the motion is located at document 22.

decisionmakers had any reason to question that the reports were not credible.  The plaintiff's retort that she had never been accused of or disciplined for similar conduct in the past does not create a factual dispute sufficient to overcome the defendant's motion for summary judgment. Although some might argue that the defendant's action might seem harsh under the circumstances, Eleventh Circuit precedent makes it clear that this court is not to "sit as a super-personnel department that reexamines an entity's business decisions."[15]  *Elrod*, 939 F.2d at 1470. The motion is due to be granted as to the termination claims.

### B.    ADA Claim

On the disability discrimination claim (Count One), the plaintiff asserts that the defendant failed to accommodate her as required under the ADA.  (Complaint at ¶ 24.)  Specifically, she asserts during her deposition that she was disciplined for missing work too often.  (Moss Dep. at pp. 290-307.)  In her responsive brief, she asserts that the defendant failed to provide her with accommodations suitable to her needs.  (Response at p. 4.)  She states that her "needs were ignored and/or refused" by the defendant.  *Id.*

The applicable law is well-settled.  "The ADA mandates that employers shall not discriminate against 'a qualified individual with a disability.'"  *Chanda v. Engelhard/ICC*, 234 F.3d 1219 (11th Cir. 2000) (citing 42 U.S.C. § 12112(a)).  "In order to establish a *prima facie* case of discrimination under the ADA, [Moss] must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).  "Under the ADA, an individual has a

---

[15]The court similarly finds that the plaintiff's assertion that she did not make the threats is insufficient to challenge the integrity of the decision.

'disability' if [she] '(1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.'  42 U.S.C. § 12102(2)."  *Butler v. Greif Bros. Service Corp.*, 231 Fed. Appx. 854, 856, 2007 WL 1244206 (11th Cir. 2007).  "Major life activities include 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'  29 C.F.R. § 1630.2(I)."  *Id.*  "[A] physical impairment alone is not necessarily a disability under the ADA."  *Hilburn*, 181 F.3d at 1226.

The defendant does not generally contest that the plaintiff has various physical impairments, however, it does contest whether she is disabled under the ADA.  (Brief at p. 20.) As just noted, to constitute a disability within the meaning of the ADA, a physical impairment must substantially limit one or more of the major life activities.

> The regulations define "substantially limits" as rendering an individual "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."[ ]  The regulations also discuss three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.[ ]

*Chanda*, 234 F.3d at 1222 (footnotes omitted).

Although the plaintiff suffers from hepatitis C, ischemic heart disease, and a nerve disorder in her left arm, her deposition testimony establishes that these impairments did not substantially affect her ability to do her work as a legal assistant, or otherwise impeded her ability to perform major life activities.  To the contrary, although she testified that her back and heart

problems limited her ability to lift heavy boxes, she did it anyway.  (Moss Dep. at pp. 266-73.)

There is no indication that the plaintiff could not perform daily activities, such as working in a

business setting like a law office.  Additionally, the evidence does not indicate any other major

life activity, such as dressing herself, driving, walking, seeing, hearing, speaking, breathing or

learning, that is affected by her physical conditions under the ADA.[16]  In so finding, the court

does not doubt that the plaintiff has physical impairments, however, the evidence is insufficient

to demonstrate a genuine issue as to any substantial limitation.

The court also finds that the plaintiff cannot establish the third element of a *prima facie*

case under the ADA, that is, that the defendant discriminated against her because of her alleged

disabilities.  The plaintiff argues that the defendant "fail[ed] to provide accommodations suitable

to Moss' needs" and her needs "were ignored and/or refused by Bradley."  (Response (doc. 22) at

p. 4.)  She further argues, "Without providing accommodations such as therapeutic arm and hand

braces and/or the termination of requiring Moss [to] lift and move heavy boxes, Moss'

disabilities were exploited and substantially hindered her job performance."  *Id*. at pp. 4-5.

Contrary to the plaintiff's arguments, there is no evidence that she asked for the foregoing

accommodations and that the defendant denied the same.  As already noted, the plaintiff stated

that she simply did the lifting on her own accord.  Additionally, to the extent that the plaintiff

argues that she was discriminated against with regard to her attendance at work, the evidence is

not sufficient to overcome the motion for summary judgment.  The defendant correctly argues

---

[16]In her reply brief, the plaintiff simply argues that she "clearly falls into the aforementioned [disability] categories as she has medical records evidencing ischemic heart condition, hepatitis C, and a nerve disorder which 'substantially limits' movement in her left arm and full closure of her left hand."  (Response at p. 4.)  She also argues that "Bradley knew of these conditions and/or impairments . . . ."  *Id*.  The court does not find these allegations sufficient to show that the defendant regarded the plaintiff as being disabled.  *See* 42 U.S.C. § 12102(2)(C).

that the plaintiff has not adequately tied her reprimands for excessive absences to her physical impairments.  (Brief at p. 21.)  Nothing in the memoranda evidencing the counseling sessions even suggests that the plaintiff sought any type of accommodation for any physical condition.[17] (Moss Dep. at Ex. 2 & 3.)[18]

In sum, the court finds that summary judgment is due to be granted as to the plaintiff's ADA discrimination claim.

### C.    Race Discrimination Claims

The plaintiff asserts that the defendant has discriminated against her in that she was terminated because of her race and because the defendant "allowed another employee, who is white, to arrive late repeatedly and without consideration of termination, while Plaintiff was reprimanded and threatened with termination for the same."  (Brief at p. 23 (citing Complaint at ¶ 21).)  The defendant counters that summary judgment is due to be granted it on the plaintiff's race discrimination claims (Counts Two and Three) because she cannot establish a *prima facie* case of discrimination.  *Id.*

As with the last claim, the applicable law is well-settled.  The usual *McDonnell Douglas* burden shifting analysis is applicable.  To establish a *prima facie* case, the plaintiff must show

---

[17]In fact, as noted by the defendant, the plaintiff apologized.  She stated:

> I am very sorry that I've had to miss days off on my job because of various Doctors Appointments and Hospitalizations.  I have done the best that I could to prevent absenteeism.  I will put forth more effort to prevent the tardiness, Short Days for Doctor Appointment.  I will talk to my doctor's [sic] about scheduling my appointment closer to the end of the day in which I've done already.

(Moss Dep. at Ex. 3.)

[18]The defendant also correctly notes that an employee, such as the plaintiff, may be reprimanded, disciplined, or counseled for attendance issues without running afoul of the requirements of the ADA.  *See Jackson v. Veteran's Admin.*, 22 F.3d 277, 279 (11th Cir. 1994) (the plaintiff failed to establish that he is an otherwise qualified individual because he has failed to satisfy the presence requirement of the job).

that "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006). The defendant asserts that the plaintiff cannot establish the second and third elements of her claim (*e.g.*, an adverse employment action and that other similarly situated employees were treated differently).

To the extent that the plaintiff's race claim is premised on her termination, that certainly constitutes an adverse employment action. However, to the extent that her claim is premised on her being "reprimanded and threatened with termination" for absenteeism (*e.g.*, arriving late), the issue requires further examination.

An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1238 (11th Cir. 2001). "[T]o prove adverse employment action . . . an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Id.* at 1239. "[S]ome threshold level of substantiality . . . must be met for unlawful discrimination to be cognizable," because "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." *Id.* at 1238-39 (citations omitted).

The defendant argues that the written reprimands and the plaintiff's assertion that the placement of the same in her personnel file made her sick and led to a "demotion" in that the

14

attorney she worked for gave her less work, do not constitute adverse employment actions.

(Brief at p. 21.)  The defendant principally relies on the holding in *Davis*.  The plaintiff counters

as follows:

> . . .  In such a large firm such as Bradley, it is common knowledge that one of the main premises of job performance and monetary bonuses focuses on "billable hours."  Moss stated in her deposition that after being assigned to Mark [sic] Lembke, a partner who had never had an African American legal assistant, he began to assign less work to Moss.  Moss Depo. 177-81.  By orchestrating a reduction in work and summarily billable hours, Moss was subjected to "adverse employment action" thereby, meeting the second prong of the establishment of a prima facie case for discrimination.  Such an adverse employment action directly affected monetary bonuses given to employees for their work related performances.  Such behavior undoubtedly caused Moss to suffer economic injury . . . .  Lastly Moss contends that other similarly situated employees received preferential treatment.  The other employees, who were also administrative personnel and Caucasian, also had numerous absences from work and were not disciplined by Bradley.  Such preferential and disparate treatment evidences discrimination on its face against Moss and presents a genuine issue of material fact.

(Reply at pp. 5-6.)

The plaintiff's argument that low billable hours led to lower pay is not supported by the

record.  In fact, there is no evidence before the court to support this argument.[19]  Even if the

---

[19]This argument was first advanced in the plaintiff's reply brief.  (Reply at pp. 5-6.)  To the extent that the plaintiff premises her argument of an adverse job action on the reprimand and counseling sessions alone, the court finds that they are not sufficient to state a claim.  For instance, in *Davis*, the court stated:

> . . .  Congress simply did not intend for Title VII to be implicated where so comparatively little is at stake.
>
> . . . .
>
> [T]he protections of Title VII simply do not extend to "'everything that makes an employee unhappy.'" . . . .
>
> . . .  Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance.  Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee.  Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely – without more – establish the adverse action necessary to pursue a claim

record supported this assertion, the motion for summary judgment still is due to be granted for the additional reason that she has failed to bring forth a similarly situated white employee that was treated differently.

The plaintiff asserts that Debbie Rowe,[20] a white secretary with different physical impairments, "also had attendance problems and had not been disciplined."  (Complaint at ¶ 16; See also Moss Dep. at pp. 232-37.)  During the plaintiff's deposition, she also testified that Brenda Norris, another white secretary, received preferential treatment.  (Moss Dep. at pp. 285-89.)  The defendant retorts that "Moss has no concrete evidence to back up her beliefs; she admitted in her deposition that she does not know how Rowe and Norris were treated.  Her beliefs are based on speculation and conjecture, which are insufficient to help her avoid summary judgment.  *See, e.g.*, *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) ('All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable.') (citation omitted)."  (Brief at p. 25.)

The record before the court is insufficient as a matter of law to overcome the defendant's

---

under Title VII's anti-discrimination clause.

. . . .

A contrary view would potentially open the door to a wide variety of unfair work assignment claims that should not be litigated in the federal courts.  *Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions . . . .  Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities.*

For these reasons, applying the adverse action requirement carefully is especially important when the plaintiff's claim is predicated on his disagreement with his employer's reassignment of job tasks.

*Davis*, 245 F.3d at 1240, 1242, & 1244 (citations omitted) (emphasis added).

[20]Rowe is also referenced in the record as Roe.

16

motion for summary judgment on the race discrimination claims for a number of reasons.  First,

the court is not satisfied that Rowe and Norris are appropriate comparators.  To be comparators

she must be "similarly situated in all relevant aspects to the non-minority employees." *Silvera v.*

*Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001).  The plaintiff has not

demonstrated that the position of secretary is sufficiently similar for comparison purposes to the

position of Legal Assistant II.[21]  Second, the plaintiff's conclusory statements that Rowe and

Norris were treated differently is insufficient.[22]

In sum, the court finds that the motion for summary judgment is due to be granted on the

plaintiff's race discrimination claims (Counts Two and Three).

### D.      FMLA Claims

#### 1.      Denial of Benefits

The plaintiff next alleges that she was "denied full benefits and rights under the FMLA in

that she was denied leave to which she was entitled . . . for her own medical needs and her

employment was wrongfully terminated."  (Complaint at ¶ 36.)  The defendant asserts

entitlement to summary judgment because the evidence simply does not support her claims.

---

[21]The plaintiff acknowledged in her deposition that Rowe had a different job than she did.  (Moss Dep. at 237.)

[22]The plaintiff testified at her deposition as follows:

Q.      How do you know that Debbie Rowe wasn't treated exactly the same way you were?

A.      I'm pretty sure she wasn't.

Q.      But you don't know do you?

A.      I'm pretty sure she wasn't --

Q.      Okay.

A.      -- because she is still working.

(Moss Dep. at 234.)

(Brief at p. 26.)

Under the FMLA, the plaintiff was eligible to take up to 12 weeks a year in unpaid leave for a serious health condition.  *See* 29 U.S.C. § 2612(a)(1).  "To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c)."  *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).

The plaintiff's first FMLA claim involves an assertion that the defendant denied or interfered with her benefits claim.  "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied."  *Strickland*, 239 F.3d at 1206-07.  The employer's motives are irrelevant.  *Id*. at 1208.  Moss appears to be asserting that her termination denied her the opportunity to exercise her benefits.  (Response at pp. 6-7.)  The defendant retorts that she was allowed to take her FMLA leave the only time she asked for it – August 2005.  (Brief at p. 28.)  Additionally, the defendant notes that the plaintiff was informed in January 2006 by Human Resource Manager Davis that she could take additional FMLA leave if she requested it in accordance with Bradley Arant's written procedure.  (Moss Dep. at Ex. 2.)  However, the defendant further states that the plaintiff "chose not to heed Davis's advice because she 'had no intentions of being off on FMLA.'  *Id*. at p. 304.  She therefore has no claim for interference with her FMLA rights . . . ."  (Brief at pp. 26-27 (citation and footnote omitted).)

18

The defendant's motion for summary judgment is due to be granted as to this claim for two reasons.  First, Moss has not alleged that she made a specific request for FMLA leave that was denied.  To the contrary, as pointed out by the defendant, she did not want to be off on FMLA leave for whatever reason.  Thus, a jury could not find that the defendant intended to interfere with her FMLA rights under the circumstances.  Second, because the record demonstrates that the plaintiff was terminated for a reason "wholly unrelated" to the absenteeism issue, the plaintiff cannot establish an interference claim under the circumstances.  *Strickland*, 239 F.3d 1208 ("if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable" for FMLA leave).

### 2.    Retaliation

The plaintiff also asserts a FMLA retaliation claim (Count Five), stating that the defendant retaliated against her for making requests for benefits under the FMLA.  She specifically states that the write-ups and her termination were premised on her request for benefits.  *Id*. at ¶¶ 38-40.  The defendant retorts that the evidence simply does not support this claim.  (Brief at p. 29.)  The plaintiff did not specifically respond to the defendant's motion for summary judgment concerning the retaliation claim.  (See Response at pp. 6-7.)

Once again, the applicable law is well-settled:

> When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, we apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for evaluating Title VII discrimination claims.  *See Brungart v. BellSouth Telecomm. Inc*., 231 F.3d 791, 798 (11th Cir. 2000)  In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.  *Parris v. Miami Herald Publ'g Co*., 216

F.3d 1298, 1301 (11th Cir. 2000).

*Strickland*, 239 F.3d at 1207.  Thus, "a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'"  *Id*. at 1206-07 (citations omitted).

The plaintiff's retaliation claim must fail under the evidence in the record.  The plaintiff asserts that the defendant retaliated against her for requesting FMLA leave "by harassing her, counseling her, and, ultimately, terminating her employment."  (Complaint at ¶ 39.)  However, the evidence does not support her claim.  The plaintiff was counseled concerning her absences in September 2005 and January 2006.  However, nothing indicates that this was retaliation for requesting FMLA leave.  To the contrary, the evidence shows that in January 2006, Davis reminded the plaintiff that she could request that her absences be counted against her FMLA leave.[23]  The plaintiff, however, testified at her deposition that she had "no intentions of being off on FMLA."  (Moss Dep. at p. 304.)  Under the circumstances, this evidence does not and cannot support a retaliation claim.[24]

To the extent that the plaintiff also asserts that her termination is a consequence of her taking FMLA leave, the record similarly does not support the claim.  As already discussed, the termination is a direct consequence of the plaintiff's threatening comments made in the work

---

[23]The memorandum of the event states:

As mentioned before, if any of these absences are medically qualifying events under the Family Medical Leave Act (FMLA) you must complete the appropriate documentation along with accompanying physician's statements.  The information will then be reviewed and either approved or denied based on the criteria for a medically qualifying event.  (FMLA forms attached).

(Moss Dep., Ex. 2 at 2.)

[24]The court again also finds that the counseling/reprimand alone is insufficient to constitute an adverse employment action.

place.  Although relatively close in proximity to the January counsel session concerning her excessive absences, there is no connection between the two events.  To the contrary, as just found, Davis encouraged the plaintiff in January to take FMLA leave.  Additionally, the plaintiff has offered nothing that challenges the fact that the decisionmakers relied in good faith on the reports that the plaintiff threatened violence in the work place.  Absent more, the defendant's motion for summary judgment is due to be granted on the retaliation claim.

## V.    CONCLUSION

Based on the foregoing, the court finds that the defendant's motion for summary judgment (doc. 16) is due to be granted.  An order in accordance with this finding will be entered.

**DONE**, this 31st day of March, 2008.

_John E. Ott_

**JOHN E. OTT**
United States Magistrate Judge

21